IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DRAKE CULPEPPER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:21-cv-58-CWB |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

**I.    Introduction and Administrative Proceedings**

Drake Culpepper ("Plaintiff") filed applications for child disability insurance benefits under Title II of the Social Security Act on April 9, 2019 and June 4, 2019, wherein he alleged a disability onset of February 12, 2018 due to unspecified psychosis, schizophrenia, ADHD, mood disorder, development disorder of social skills, pervasive developmental disorder, phonological disorder, and mixed obsessional thoughts and acts.  (Tr. 20, 65-66, 69, 79, 81-82, 95).[2]  The claims were denied at the initial level on June 27, 2019 and July 8, 2019, and Plaintiff requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 20, 65-79, 81-97, 102, 107-111).  The ALJ heard the case on September 23, 2020, at which time testimony was given by Plaintiff and his stepmother (Tr. 20, 34-48) and by a vocational expert (Tr. 48-52).  The ALJ took the matter under advisement and issued a written decision on October 6, 2020 that found Plaintiff not disabled.  (Tr. 20-29).

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to transcript pages are denoted by the abbreviation "Tr."

The ALJ's written decision contained the following enumerated findings:

1. Born on December 22, 2000, the claimant had not attained age 22 as of February 12, 2008, the alleged onset date (20 CFR 404.102 and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity since February 12, 2008, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: schizophrenia, attention-deficit hyperactivity disorder, learning disorder, anxiety, depression, and obsessive-compulsive disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he should never use ropes, ladders, or scaffolds; never be exposed to unprotected heights or dangerous moving machinery. He is limited to occasional judgment on the job; occasional changes in the work setting. He may never have contact with the public, but may have frequent contact with coworkers. He can perform simple, routine, and repetitive work with a reasoning level up to and including 3, performed on a sustained basis 8 hours a day, 5 days a week in 2-hour increments with normal breaks. He is also limited to low stress work, defined as no fast paced work like an assembly line, where one has to produce a product in a high-speed manner.

6. The claimant has no past relevant work (20 CFR 404.1565).

7. The claimant was born on December 22, 2000 and was 7 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education (20 CFR 404.1564).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from February 12, 2008, through the date of this decision (20 CFR 404.350(a)(5) and 404.1520(g)).

(Tr. 22, 24, 28, 29).

On December 11, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to remand the case for a new hearing and further consideration. (Doc. 14 at p. 15). As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to entry of final judgment by a United States Magistrate Judge (Docs. 5 & 6), and the undersigned finds that the case is now ripe for review pursuant to 42 U.S.C. § 405(g). Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the final decision is due to be AFFIRMED.

## II.  Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one. Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted). The court thus may reverse the ALJ's decision only if it is convinced that the

decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  However, reversal is not warranted merely because the court itself would have reached a result contrary to that of the factfinder.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  Additionally, "[t]he Social Security Administration has promulgated regulations that provide for the payment of disabled child's insurance benefits on the earnings record of an insured person who has died if the claimant is the insured person's child and is 18 years old or older with a disability that began before the claimant attained age 22." *Mills v. Berryhill*, No. 17-21832-CIV, 2018 WL 6446883, at *2 (S.D. Fla. Oct. 18, 2018) (citing 20 C.F.R. § 404.350(a)(5)); 42 U.S.C. § 402(d).  To make a disability determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.[4]

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[4] "The Commissioner of Social Security employs the same five-step sequential evaluation process in determining the disability of a child who was under a disability after age 18 but prior to age 22

>   (1) Is the person presently unemployed?
>
>   (2) Is the person's impairment severe?
>
>   (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
>
>   (4) Is the person unable to perform his or her former occupation?
>
>   (5) Is the person unable to perform any other work within the economy?
>
>   An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical

---

that is utilized to determine whether adult claimants are entitled to disability benefits." *Edwards v. Kijakazi*, No. CV 20-0614, 2022 WL 99984, at *3 (S.D. Ala. Jan. 10, 2022).

[5] *McDaniel* is a Supplemental Security Income case. Nonetheless, the same sequence applies to claims for disability insurance benefits brought under Title II. SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform.  *Id*. at 1239.  To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE").  *Id*. at 1239-40.  The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

**III.   Issues on Appeal**

Plaintiff raises two issues on appeal: (1) whether the ALJ improperly substituted the ALJ's own opinion for the opinion of non-examining State agency psychological consultant Linda Duke, Ph.D.; and (2) whether the ALJ properly evaluated the prior administrative medical finding of Dr. Duke when determining Plaintiff's RFC. (Doc. 14 at p. 1).  The Commissioner contends that the ALJ's consideration of the evidence, including the prior administrative findings, and the ALJ's fashioning of Plaintiff's RFC based upon Dr. Duke's opinion are supported by substantial evidence.  (Doc. 17 at p. 1).

**IV.   Discussion**

    **A.   The Substitution of the ALJ's Opinion for that of Dr. Duke's Findings**

Plaintiff argues that the ALJ committed legal error by substituting the ALJ's own opinion for that of Dr. Duke and that the ALJ materially altered the meaning of the limitation articulated by Dr. Duke.  (Doc. 14 at p. 10).  Specifically, Plaintiff asserts that the ALJ's limiting Plaintiff in the RFC to work that is classified as a reasoning level three was inconsistent with the opinion of

6

Dr. Duke, as Plaintiff would have been limited to jobs with a reasoning level of one based upon Dr. Duke's opinion.  (*Id*. at pp. 10-11).   The Commissioner contends that the ALJ properly considered Dr. Duke's prior administrative findings, and some of the evidence that supported the mental limitations were ultimately included by the ALJ into the RFC.  (Doc. 17 at p. 8).

Because Plaintiff's claims were filed on April 9, 2019 and June 4, 2019 (Tr. 20), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The revised regulations no longer use the phrase "treating source," but instead use "your medical source(s)." *See* 20 C.F.R. § 404.1520c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309, at *5 (N.D. Ala. July 22, 2021).  For claims governed by the revised regulations, the agency thus "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. § 404.1520c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022).  "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)." *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(b)). Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources."  *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, in evaluating the persuasiveness of medical opinion(s) or prior administrative medical finding(s), "[the agency] will consider those medical opinions or prior administrative medical findings from that medical source together" using the following

factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). "The most important factors ... [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency." 20 C.F.R. § 404.1520c(a), (b)(2); *Simon*, 2021 WL 4237618, at *3. Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296, at *4 (M.D. Fla. Apr. 14, 2022). "The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors." *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(a)-(c)). "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050, at *3 (M.D. Ala. June 23, 2022). Moreover, "'[t]he ALJ may but is not required to explain how he considered the other remaining factors.'" *Id*. at *4 (citation omitted); 20 C.F.R. § 404.1520c(b)(2). And the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. … Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citations omitted).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations."). "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036, at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646, at *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted). Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed. *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence

9

in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted). Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532, at *4 (S.D. Ala. Mar. 9, 2022).

Plaintiff contests the portion of the RFC in which the ALJ stated that he "can perform simple, routine, and repetitive work with a reasoning level up to and including 3," as it conflicts with Dr. Duke's finding that Plaintiff "retains sufficient mental capacity to carry out short and simple one to two step directions." (Tr. 24, 76, 92). In evaluating Dr. Duke's administrative findings, which the ALJ found were "generally persuasive," the ALJ stated:

> The psychological consultants' determination that the claimant's mental impairments resulted in moderate limitations in each of the four B criteria is persuasive, as it is generally supported by and consistent with the longitudinal record of evidence. Although their limitations are somewhat vague, they are supported by and consistent with findings on mental status examination in the longitudinal record. Their determination that the claimant is able to understand, remember, and carry out short and simple one to two step instructions, with the ability to maintain attention and concentration for at least 2-hour periods during an 8-hour workday, with customary work breaks, is consistent with the claimant's below average intelligence and some reports of decreased ability to maintain attention and concentration as well as obsessive or repetitive behaviors (5F/2, 4, 7, 9, 12, 21; 6F/2, 5, 11). Their determination that the claimant should have infrequent, casual, and non-intensive contact with the public and would be able to work in coordination and in the same general area with others on a casual basis, with no intense interactions or close coordination requirements is also consistent with findings including fair eye contact, some mood swings or irritability, and sometimes mumbling to himself (5F/2, 4, 7, 9, 12; 6F/2, 8). Their determination that work setting changes should be minimal, gradual, and fully explained is also generally consistent with findings in the longitudinal record, especially findings noting fair or limited judgment and insight, as well as the claimant's history of auditory and visual hallucinations, prior to psychiatric medication adjustments (1F; 5F/2, 4, 7, 9, 12, 45; 6F/2, 5, 11).

(Tr. 26-27, 72-76, 88-92, 456, 458, 461, 463, 466, 475, 499, 508, 511, 514, 517).

10

The ALJ also considered the medical opinion of Plaintiff's treating psychiatrist, Jonathan Pfeiffer, M.D., finding it "somewhat persuasive." (Tr. 27). Dr. Pfeiffer's opinion that the Plaintiff demonstrated a marked limitation in almost all functional areas was determined to be not persuasive, as it was not supported by Dr. Pfeiffer's treatment notes, which noted "generally normal findings on mental status examination, including fully oriented, cooperative behavior, normal speech, euthymic mood, concrete thought process, intact memory, with no auditory or visual hallucinations and no suicidal or homicidal ideations." (Tr. 27, 456, 458, 461, 463, 466, 508, 511, 517). However, the ALJ found that Dr. Pfeiffer's opinion that Plaintiff demonstrated moderate limitations in personal habits, responding to co-workers, and performing complex, repetitive, or varied tasks was more persuasive, as it was "generally consistent with findings on mental status examination throughout the longitudinal record noting below average intelligence, fair eye contact, and fair to limited judgment and insight." (Tr. 27, 456, 458, 461, 463, 466, 508, 511, 517). The ALJ cited Dr. Pfeiffer's treatment records as being particularly persuasive in determining the persuasiveness of his opinions. (Tr. 25, 27).

As stated previously, the ALJ—not a doctor—has the duty to determine a claimant's RFC. *Moore*, 649 F. App'x at 945. Thus, an ALJ "is not required to base[] [the] RFC on a doctor's opinion." *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053, 2022 WL 860190, at *6 (N.D. Ala. Mar. 22, 2022) (citing *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014)); *Vilches v. Kijakazi*, No. 3:21-CV-15, 2022 WL 11455775, at *2 (M.D. Ala. Oct. 19, 2022) ("Indeed, 'an ALJ's RFC assessment need not match or mirror the findings or opinions of any particular medical source ... because the reasonability of assessing the RFC rests with the ALJ.'") (citation and internal quotation marks omitted). While state agency medical or psychological consultants are considered experts in Social Security disability evaluation, "[a]dministrative law

11

judges are not required to adopt any prior administrative findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate." 20 C.F.R. § 404.1513a(b)(1). The regulations provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). "Thus, an ALJ need not adopt every part of an opinion that the ALJ finds persuasive." *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-CV-1076, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021); *Vilches*, 2022 WL 11455775, at *3 ("Moreover, the ALJ provides an RFC by considering the entirety of the evidence rather than a single opinion—not simply regurgitating in the RFC from even persuasive medical opinions, and some slight deviation may be appropriate."). *See also Szoke v. Kijakazi*, No. 8:21-CV-502, 2022 WL 17249443, at *9 n.12 (M.D. Fla. Nov. 28, 2022) (collecting cases). Nor is an ALJ "compelled to 'specifically refer to every piece of evidence in his decision.'" *Szoke*, No. 8:21-CV-502, 2022 WL 17249443, at *9 (citation omitted).

Here, the record shows that the ALJ properly applied the regulations in considering the persuasiveness of Dr. Duke's administrative findings under 20 C.F.R. § 404.1520c. The ALJ noted that Dr. Duke's opinion was generally supported by and consistent with the longitudinal record of evidence, as although the limitations were somewhat vague they were supported by and consistent with findings on mental status examination in the longitudinal record. (Tr. 26-27). While the ALJ found that Dr. Duke's opinion was "generally persuasive," the ALJ was under no obligation to adopt every part of Dr. Duke's opinion. "By merely finding a medical source's opinion 'generally persuasive,' an ALJ does not abdicate their authority—and obligation—to reach an RFC determination based on a thorough review of the entire evidentiary record." *Vilches*, 2022 WL

11455775, at *3 n.2.  "An ALJ does not properly discharge [his or] her duty by finding a single medical opinion persuasive and then deferring verbatim to that physician's findings."  *Id*. Therefore, an "ALJ need not adopt every part of an opinion that the ALJ finds generally persuasive."  *Id*.; *Guth v. Comm'r of Soc. Sec.*, No. 2:21-CV-106, 2022 WL 8211404, at *9 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 2:21-CV-106, 2022 WL 4115784 (M.D. Fla. Sept. 9, 2022) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("The regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive."); s*ee Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source ... because the responsibility of assessing the RFC rests with the ALJ."); *Tolbert*, 2022 WL 4591646, at *2 ("There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination or specifically address every aspect of an opinion or every piece of evidence in the record."); *Powell v. Kijakazi*, No. CV 321-066, 2022 WL 4000719, at *5 (S.D. Ga. Aug. 9, 2022), *report and recommendation adopted*, No. CV 321-066, 2022 WL 3970838 (S.D. Ga. Aug. 31, 2022) ("[F]inding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC."); *Williamson*, 2022 WL 2257050, at *3.

The record reflects that in determining that Plaintiff could "perform simple, routine, and repetitive work with a reasoning level up to and including 3," the ALJ properly considered Dr. Duke's prior administrative findings, along with the record as a whole in determining Plaintiff's mental limitations in the RFC.  The ALJ considered the testimony and subjective statements in the record, treatment records and objective findings from Plaintiff's mental health treatment, and Dr. Pfeiffer's opinion.  (Tr. 25-27).  Determining of Plaintiff's RFC was within the

province of the ALJ.  The ALJ adequately discussed the evidence in the record in fashioning Plaintiff's RFC, and the ALJ's decision was supported by substantial evidence.

Citing Eleventh Circuit caselaw that relies on *Washington v. Commissioner of Social Security*, 906 F.3d 1353 (11th Cir. 2018), Plaintiff maintains that he was limited to jobs at reasoning level of one based upon Dr. Duke's opinion that he had the ability to understand, remember and carry out instructions that are "short" and "simple" and "one to two step[s]" and that all jobs provided by the VE would have been precluded had the ALJ not substituted the ALJ's own opinion for that of Dr. Duke's because those jobs require the ability to understand detailed instructions that are not limited in length.  (Doc. 10-12, citing Tr. 76, 92).  "Job descriptions in the [Dictionary of Occupational Titles] [DOT] include specific vocational preparation time ("SVP") numbers and reasoning levels, which supply supplemental information about the listed jobs." *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 872 (11th Cir. 2016).  The DOT describes the reasoning levels of one, two and three, as follows:

> 03 LEVEL REASONING DEVELOPMENT
>
> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.
>
> 02 LEVEL REASONING DEVELOPMENT
>
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> 01 LEVEL REASONING DEVELOPMENT
>
> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*See* DOT Appendix C – Components of the Definition Trailer, 1991 WL 688702 (4th ed. rev'd Jan. 1, 2016).

Plaintiff's reliance on *Washington* and its progeny is misplaced. In *Washington*, the Eleventh Circuit discussed the ALJ's duty at step five to identify and resolve conflicts between the Dictionary of Occupational Titles and VE testimony <u>after</u> the ALJ has determined Plaintiff's RFC. *Washington*, 906 F.3d at 1362, 1365. Here, Plaintiff is asserting that the ALJ's opinion was improperly substituted for Dr. Duke's opinion when fashioning Plaintiff's RFC between steps three and four. Thus, the case law cited by Plaintiff does not apply to his argument that the ALJ's limitation in the RFC was inconsistent with Dr. Duke's findings.

Again, determining RFC is the province of the ALJ. The ALJ was not obligated to adopt Dr. Duke's opinion in its entirety, and the ALJ properly evaluated the persuasiveness of Dr. Duke's opinion under 20 C.F.R. § 404.1520c. The record reflects that the ALJ properly considered the entire record in determining that Plaintiff could perform simple, routine, and repetitive work with a reasoning level up to and including three and that the ALJ's determination was supported by substantial evidence.[6]

**B.     The Administrative Medical Finding of Dr. Duke**

Plaintiff next argues that the ALJ's RFC determination ignored Dr. Duke's opinion limiting him to "no intense interactions or close coordination requirements" with coworkers. (Doc. 14 at

---

[6] The court notes that "[t]he Eleventh Circuit and courts within it have found that a limitation to simple, routine, and repetitive tasks/work is not inconsistent with a reasoning level two job." *Williamson*, 2022 WL 2257050, at *4 (citing *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020)); *Pennington v. Kijakazi*, No. 3:20-cv-434, 2022 WL 816076, at *9 (M.D. Ala. Mar. 17, 2022) (finding that plaintiff's RFC, which included a limitation to "simple routine tasks involving no more than simple, short instructions and simple work-related decisions" was not inconsistent with level two reasoning jobs); *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320, 1323 (11th Cir. 2021) (there is no apparent conflict between one's limitation to understand, carry-out, and remember simple instructions and positions that require the ability to follow "detailed but uninvolved" instructions at a reasoning level two). Here, the jobs identified by the VE--vehicle cleaner, DICOT 919.687-014, 1991 WL 687897; day worker, DICOT 301.687-014, 1991 WL 672654; kitchen helper, DICOT 318.687-010, 1991 WL 672755—were all reasoning level two jobs.

p. 12). Plaintiff contests the portion of the RFC that provides that "[h]e may never have contact with the public, but may have **frequent contact with coworkers**." (*Id*. at p. 13, citing Tr. 24) (emphasis added by Plaintiff). Plaintiff contends that the RFC is inconsistent with the ALJ's finding that Dr. Duke's determination that Plaintiff "would be able to work in coordination and in the same general area with others on a **casual basis**, with **no intense interactions or close coordination requirements** *is also consistent* with findings including fair eye contact, some mood swings or irritability, and sometimes mumbling to himself." (*Id*. at p. 14, citing Tr. 26) (emphasis added by Plaintiff). Plaintiff maintains that despite the ALJ's finding Dr. Duke's opinion consistent and persuasive, there was no limitation in the ALJ's RFC addressing Dr. Duke's limitation on the quality of interaction with coworkers. (*Id*.).

As discussed previously, the ALJ is tasked with determining a claimant's RFC and is not obligated to base the RFC on any one opinion. Here, the ALJ properly evaluated Dr. Duke's opinion and sufficiently discussed the entire record in determining Plaintiff's RFC. While the ALJ found Dr. Duke's findings to be generally persuasive, the ALJ also found the limitations to be "vague." (Tr. 26). The ALJ noted elsewhere in the decision that Plaintiff was moderately limited in interacting with others. (Tr. 23).[7] In discussing the "paragraph B" criteria, the ALJ noted that the record showed that Plaintiff "remained able to interact with others one-on-one," and that his strengths in his IEP for 2019-2020 included "his friendliness and manners, that he [was] very respectful to teachers, staff, and peers, and [was] very good at initiating conversation with staff

---

[7] "'[I]t is proper to read the ALJ's decision a whole, and ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses' at multiple points in the decision." *Pariseau v. Comm'r of Soc. Sec.*, No. 2:20-CV-01224, 2022 WL 4277295, at *7 n.5 (N.D. Ala. Sept. 15, 2022) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004)); *Bradford v. Sec'y of Dep't of Health & Human Servs.*, 803 F.2d 871, 873 (6th Cir. 1986) (explaining ALJ's decision should be considered as "entire opinion").

and peers," and that providers had described him as cooperative. (Tr. 23, 302, 456, 458, 461, 463, 466). Thus, based upon the record as a whole, the court finds that the ALJ's RFC determination is supported by substantial evidence.

Moreover, even if the ALJ erred by not also limiting Plaintiff to having no intense interactions or close coordination requirements, such an error would be harmless. The DOT entries for the three jobs identified by the VE (DICOT 919.687-014 (vehicle cleaner), 1991 WL 687897; DICOT 301.687-014 (day worker), 1991 WL 672654; DICOT 318.687-010 (kitchen helper), 1991 WL 672755) do not involve any significant interaction with others: "People: 8 - Taking Instructions-Helping--Not Significant."[8] Therefore, even if the ALJ had included Dr. Duke's limitation in the RFC, Plaintiff would still be able to perform each of the jobs identified at step five.

## V.  Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes that the Commissioner's decision is due to be **AFFIRMED**. A separate judgment will issue.

**DONE** this the 31st day of March 2023.

_____
CHAD W. BRYAN
UNITED STATES MAGISTRATE JUDGE

---

[8] "[T]he DOT's job descriptions identify the highest functions in each occupation concerning a worker's need to interact with 'Data, People, and Things.' For interacting with people, the DOT uses an eight-level list with 'mentoring' being the highest functional classification and 'taking instructions-helping' being the lowest." *Reyes v. Comm'r of Soc. Sec.*, No. 219CV866, 2021 WL 9639040, at *8 (M.D. Fla. Feb. 16, 2021), *report and recommendation adopted sub nom. Reyes v. Comm'r of Soc. Sec.*, No. 2:19-CV-866, 2021 WL 1085618 (M.D. Fla. Mar. 22, 2021) (citing DICOT Appendix B (Explanation of Data, People, and Things), 1991 WL 688701 (4th ed. rev'd 1991)).